HILLIAN CROUCH, appellant, v. H. C. PAULEY and LUCILLE A. PAULEY, d/b/a H. C. PAULEY FURNITURE STORE, appellees.

No. 50615.

(Reported in 116 N.W.2d 486)

July 24, 1962.

William O. Lewis, of Harlan, for appellant.

G. O. Hurley, of Harlan, for appellees.

Peterson, J.—This is an action brought by plaintiff to recover damages for injuries sustained by her when she fell over a roll of carpet in the main aisle running through defendants' furniture store. At the close of plaintiff's evidence the court sustained defendants' motion for a directed verdict. Plaintiff has appealed.

Specifically the alleged errors for reversal by plaintiff are: 1. That plaintiff's attention was distracted from the hazard of the carpet roll located in the aisle about three or four feet from the cashier's desk resulting in negligence by defendants. 2. Defendants were negligent because the form of the carpet roll created a hidden hazard as to which plaintiff would not have complete knowledge. 3. In general that the trial court erred in sustaining the motion for a directed verdict, rather than submit the case to the jury.

I. It is fundamental that where a verdict has been

16

directed for defendant at the close of plaintiff's evidence our consideration of the evidence must be on the basis most favorable to plaintiff. The truth of the testimony is admitted by the motion to direct.

Plaintiff only presented five witnesses. Her own testimony, Dr. C. V. Bisgard, Richard Pauley, the son of defendants and the manager of the store, and Mr. and Mrs. Marlin Nielsen, customers in the store at the same time as plaintiff.

Plaintiff entered defendants' store between 9 and 10 a.m., on July 2, 1958, looking for a gift for a friend. The saleslady took her up to the balcony to show her some clocks. She decided on a clock, and the saleslady took it to the main floor to the cashier's desk, and made out the charge slip. Mrs. Crouch also came to the cashier's desk. We can clearly state the gist of her testimony after leaving the balcony by quoting her answers in response to direct and cross-examination. Direct examination:

"As I walked back I noticed this big roll of carpeting which was in the aisle. This roll of carpeting was three or four feet from the cashier's desk, parallel with the cashier's desk. * * * It had a cover on it and came to about my knee. It was round and about twelve or fifteen feet long. * * * After I got back to the cashier's desk I paid for the clock and I asked her if they would deliver it for me. She said they would be glad to. * * * As I stood at the cashier's desk I was facing west, kind of on an angle as I went up there. I had my purse in my hand. * * * After I paid for the merchandise, *I stepped back* and turned left and started back up the aisle. After the first step I had taken with my left foot, my right toe evidently was under the carpeting just a little bit because it caught me and threw me off balance and I pitched over the carpeting." (Emphasis ours.)

Additional facts are shown in the cross-examination:

"I * * * walked back toward the cashier's desk and in the meantime stopped to talk to Marlin Nielsens, admiring their baby. As soon as I came down the stairs and started back toward the cashier's desk *I saw the carpet,* it was probably two feet high and twelve to fifteen feet long. I then went up to the counter and after I paid my bill I turned clear around on my left foot and then faced the north. I took one foot north

and the other foot was under the roll of carpet. The roll of carpet was three or four feet east of the counter, *there was room to walk*. I was facing to the north when I fell. I didn't run into the carpet, my one foot was just under the edge of it when I took a step. I caught my right foot and that threw me over the carpet at an angle." (Emphasis ours.)

Richard Pauley testified he was the manager of the store for his parents. He received shipment of a roll of carpet. Mr. Pauley stated he had the carpet roll in the back room, where the roof leaked, and on the night of July 1, 1958, a heavy rain occurred. He went down to the store between eleven and twelve o'clock at night and to protect the carpet roll from becoming wet he moved it out of the back room and placed it in the aisle of the store around four feet east of the cashier's desk which was on the west side of the main aisle.

Mr. and Mrs. Nielsen stated they were customers in the store when Mrs. Crouch came in. They were standing in front of the cashier's desk when Mrs. Crouch came up to the desk to pay her bill. They saw her fall over the carpet roll after she left the desk and was proceeding toward the egress door.

[2] II. A well recognized definition as to the responsibilities of a storekeeper is: "The owner of such a store is required to maintain it in a reasonably safe condition for customers. A customer is an invitee and the owner must exercise reasonable care to keep the building reasonably safe for his use, but the owner is not an insurer against accident." Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140; Holmes v. Gross, 250 Iowa 238, 93 N.W.2d 714; 65 C. J. S., Negligence, section 48b; 61 A. L. R. 2d 100; LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 11 N.W.2d 36; Sulhoff v. Everett, 235 Iowa 396, 16 N.W.2d 737; Brown v. Slack, 159 Neb. 142, 65 N.W.2d 382; Rogers v. J. C. Penney Co., 127 Neb. 885, 257 N.W. 252; 65 C. J. S., Negligence, section 45; Shreve v. Edmundson Art Foundation, 243 Iowa 237, 244, 50 N.W.2d 26.

In the Shreve case we said: "As applied to an invitee, a defendant is not an insurer, but is required to exercise reasonable care and to keep the premises in a reasonably safe condition for the use of those who accept and come upon the premises."

Also see Noyes v. Des Moines Club, 178 Iowa 815, 160 N.W. 215; Nelson v. Smeltzer, 221 Iowa 972, 265 N.W. 924; Osborn v. Klaber Bros., 227 Iowa 105, 287 N.W. 252; Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252.

III. It is pertinent that we give some attention to the customer's obligation while shopping in a store. We are not discussing the question of contributory negligence; we will give attention to that question later.

A customer cannot blindly and nonchalantly walk into an obvious hazard in a store and hold the storekeeper liable for negligence. In Shreve v. Edmundson Art Foundation, supra, at page 247, we stated: " 'There is no liability for * * * dangers that are obvious, or as well known to the person injured as to the owner or occupant.' " Also see Goldstein v. Healy, 187 Cal. 206, 201 P. 462; Shanley v. American Olive Co., 185 Cal. 552, 197 P. 793; Atherton v. Hoenig's Grocery, supra.

In the Shreve case the court quoted with approval from Cooley on Torts, Volume II, Third Ed., page 1259: " 'It must not be lost sight of that under the law the invitee who accepts an invitation owes a reciprocal duty to the invitor while on the invitor's premises to exercise ordinary care to avoid injuring himself. In other words, the acceptance of an invitation, express or implied, does not relieve the invitee of the duty to exercise ordinary care under all the attendant facts and circumstances.' "

38 Am. Jur., Negligence, section 97, states: "There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant."

In Atherton v. Hoenig's Grocery, supra, we said: "The duty owed by the inviter is to those, and to those only, who do not know, or, in the exercise of reasonable care for their own safety, have no reasonable means of knowing, of defects or dangers. * * * There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant.' "

IV. Appellant alleges the payment of the bill created a distraction or divergence of plaintiff's attention as to the

presence of the carpet. If it was a distraction it was concluded after she paid her bill and some time before she fell. After paying and as a satisfied customer her thoughts were to go to the egress door. She stepped back, turned on her left foot, placed her right foot under or on the carpet roll and fell. She affirmatively testified there was room for her to walk between the carpet roll and the cashier's desk.

For some unaccountable reason she did not elect to walk toward the door along the roomy, level and unobstructed aisle between the carpet and the west side of the aisle. As a physical fact she could not help but see the carpet roll as she turned north toward the door. It was two feet high and immediately to her right. There were no distracting conditions facing her at that time.

For some unaccountable reason, even under the circumstances above outlined, she *stepped back* and crowded over toward the carpet roll and caught her right foot under or in the carpet. There were no ragged or exposed parts of the carpet. It was completely enclosed in a shipping cloth.

We have only two cases in Iowa where distracting conditions were a question in shopkeeper and customer relationship. Warner v. Hansen, supra, and Corrigan v. Younker Bros. Inc., 252 Iowa 1169, 110 N.W.2d 246.

In the Warner case plaintiff was proceeding down a stairway to the basement. Hansen had placed some merchandise on the north and east side of a platform at the bottom of the stairway, which distracted plaintiff's attention. The flooring on the platform was the same general color as that on the floor of the basement. No one told plaintiff there was a step-off from the platform to the basement floor. Partly on account of the distraction of the merchandise display, and partly because plaintiff knew nothing about the step to the basement floor, she fell as she was stepping off the platform, and was injured. We held it was a case for the jury. It is not analogous to the instant case.

The other Iowa case is Corrigan v. Younker Bros., Inc., supra. Mrs. Corrigan was walking through the tearoom looking for some bridge partners. A temporary platform had been

erected for a fashion show. Just as Mrs. Corrigan reached the east side of the platform, after turning a corner, her foot struck the steps leading up on the platform and she fell. Just as she reached the steps she saw another friend some distance away and was waving at her, thus distracting her attention from the steps. We held this was *her distraction,* and *not that of defendant,* and she could not depend on her own act of distraction as to a claim against the store.

Two Minnesota distraction cases were considered in the Warner case. The first was Ober v. The Golden Rule, 146 Minn. 347, 178 N.W. 586. Mrs. Ober entered the store to look at some curtain material on display on tables. In moving from one table to another she passed a rack or frame where goods were also displayed. She testified that a drape of some kind concealed the base of the frame. She said she neither saw this portion of the frame nor looked at the floor as she passed along. She tripped and fell on the concealed base of the frame. The court said this was for the jury, partly because of the distraction in looking at goods, and partly because of the hidden frame.

The other Minnesota case described in the Warner case was Lincoln v. Cambridge-Radisson Co., 235 Minn. 20, 22, 49 N.W. 2d 1, 2. Mrs. Lincoln came into the lobby of the Radisson Hotel and walked to the fountain lunchroom on the lobby floor. There was a step-up from the lobby to the lunchroom. She proceeded along the horseshoe-shaped table toward the end, where she sat down to order some refreshment, and to visit with her daughter, who worked there. After she finished lunch she took her charge slip and moved back toward the lobby to pay. The cashier's stand was on the lunchroom level, but at the edge of it. The opinion stated: "As she approached the stand, *an abutment in the wall to her right and the decorative plants in the low boxes obstructed her view of the entrance step.* She had her hand extended to pay her check when she was caught unawares by the step and fell to the lobby floor directly below it." (Emphasis ours.)

Neither of these two cases supports the theory of distraction in the case at bar. In one there was the covered base of a rack

sticking out causing plaintiff to fall, and in the other there was a complete obstruction of plaintiff's view by a wall and decorative plants. In the instant case there was no obstruction of view of any nature as to the carpet roll.

V. Appellant's counsel contends there was something hidden with reference to the carpet roll, causing plaintiff to fall. The suggestion made is that she could not see the underside curved part of the roll. Ordinary physical facts do not sustain her claim. Plaintiff was more than ordinarily intelligent. She was in the beauty parlor business. Any person would know any curved roll of goods had a curved bottom. While she might not see the bottom she knew it was there, and if she stuck her foot under it that the foot might be temporarily caught.

Appellant only cites two cases in support of her hidden danger theory. One is the Minnesota case of Ober v. The Golden Rule, supra, which we have already discussed. The base of the rack over which Mrs. Ober tripped was completely hidden by a drape of some type.

The other case is Hubbard v. Montgomery Ward & Co., 221 Minn. 133, 21 N.W.2d 229. It is not like the case at bar. A different question is involved. No issue of hidden danger appears. Plaintiff fell on a linoleum floor which had been waxed and was wet from water. It was littered with peanut shells, cigarette stubs, gum wrappers, etc. There was also a question in the case as to whether plaintiff slipped or was pushed over by another person.

VI. Appellant asserts error in connection with the matter of contributory negligence, and that the case should be reversed to submit such question to the jury. We do not reach the question of contributory negligence in the instant case; only the question of whether or not the evidence created a fact question as to actionable negligence against defendants.

In many of these storekeeper-customer cases the questions of defendant's negligence and plaintiff's contributory negligence are improperly mixed up. We considered this question in some detail in Atherton v. Hoenig's Grocery, 249 Iowa 50, 55, 86 N.W.2d 253, 255. We said: "It must be kept in mind that we are discussing the question of the negligence of the defendants

rather than contributory negligence of, or assumption of risk by, the plaintiff."

Both counsel for appellees and the trial court realized the distinction in the case at bar. In the motion for directed verdict the question of contributory negligence was not mentioned. In sustaining the motion the trial court confined itself accordingly.

The ruling of the trial court sustaining the motion for a directed verdict in favor of defendants is approved, and the case is affirmed.—Affirmed.

HAYS, LARSON, SNELL, and MOORE, JJ., concur.

GARFIELD, C. J., and OLIVER, THOMPSON and THORNTON, JJ., dissent.